Mr. Bart? Forgive me, your honors. No problem, take your time. May it please the court, Jonathan Bart, Wilentz Goldman and Spitzer on behalf of the appellant Rick's Mushroom Service, I have with me today Michael Cutone who is the principal, one of the principals of Rick's Mushroom Service and Steve Devine, Mr. Cutone's personal counsel. This is a case where the old adage that no good deed goes unpunished truly is invoked. My client is a mushroom farmer who understands the role of the mushroom industry in recycling of agricultural waste. We read the briefs and there's a lot to what you give as the opening statement, but we still are stuck here with the legal difficulty of no warranty and a contract which isn't a contract for, it's a cooperative contract rather than a contract for procurement of as you know, Contract Disputes Act on one and the Tucker Act on the other. I don't really, I have not really argued that the Contract Disputes Act should be the applicable statute here. Let's stick with the, where's the warranty then? The warranty is the Spear and Warranty. This is a contract and there's no question that it's a contract. The case law dealing with whether a cooperative agreement is a contract really comes out and they don't cite to anything. Here in the whole idea is that the government required them to follow their specifications. These are the government's rules, you've got to follow the rules. That's what happened. And the rules are wrong. Well, that's exactly what happened here. This is a contract where we've got that kind of a relationship, the government's cooperating with you to try and help you from having an environmental problem. This is not a case where the government issued a grant and said we get to approve your plans. That was a case in which, you know, it's been declared that it's the sovereign role of the government as opposed to the proprietary role. This was a government program which was the red and white clay creek watershed program under the Watershed Protection and Flood Protection Act, which was properly funded throughout the entire period. And my clients wanted to be able to recycle spent mushroom substrate. Did they tell you exactly what you had to do and how you had to do it? Where does it say that? The plans and specifications were, it's right in the contract itself saying no deviation from the plans and specifications are permitted. And that's exactly what the government engineer, Mr. Vanderstapp, had testified to in the district court action. That no deviation was permitted. That he designed the entire complex. And that there were no deviations from that plan. Isn't your spearing claim eviscerated by Hercules? Oh, not at all, your honor. Hercules wasn't a spearing claim. Hercules involved performance specifications, not design specifications. And in fact, the trial court, I think, very accurately distinguishes the two situations. Here, the government designed a wastewater facility and effectively designed it by miscalculating the amount of spray area and the slope of the field such that in a season of heavy rain the system, which it's undisputed, was designed in order not to be a point source under the Clean Water Act, that all the effluent would be taken up by the hay fields, didn't have, had less than half of the drainage that it was supposed to have and was declared a point source by the Eastern District and thus a violation of the Clean Water Act. These are plans and specifications from a design. Hercules involved, you produce asbestos. In the Agent Orange cases, you produce Agent Orange. There was no specification of how to produce it, of what the, how to make the product. It was, we want this product made. But in both this situation and in Hercules, we have third-party claims. That's correct. But the third-party claims, I mean, that's where Lopez comes in. And I think Lopez is the controlling case on this in which a five-judge panel of this court held that to apply the Anti-Deficiency Act to a valid Spirin claim would effectively eviscerate the doctor. Because that's the reason you don't see any, until this, you don't see Anti-Deficiency Act ever constitute a defense to a valid Spirin claim. Hercules was held not to be a valid Spirin claim. Here, the court said, if it weren't for the Anti-Deficiency Act, this would be a valid Spirin claim. And it is, because it's a facility completely designed by the government. And the government paid two-thirds of the construction cost. My client paid one-third. But it's a contract. And the allegation that this isn't a contract was thrown out by this court in the trauma services case, where it said, look, a contract is a contract. A cooperative agreement can be a contract. As long as there's bargain for exchange, the government's getting what it wants to get. And there are obligations and duties on both sides. It's a contract. And you see. It's a little different from a contract, the normal contract where the government is ordering supplies. Well, right. And I could see this is not. You have basically the contract specifying certain conditions. Not specifying. Specifying that we will design this facility. And we will pay for two-thirds of it. You get to own it. Well, those are the specifications that were associated with the government's, in effect, grant of assistance. It wasn't just a grant of assistance. The government had a mandate to clean up this waterway. There was a government act. As I said, it's the Watershed Protection Flood Prevention Act. And a specific subauthorization under that in which there was a standing authorization of $500,000 to $700,000 per year in order to clean up this watershed. Pursuant to that congressional mandate, they were looking. They could have built their own facility. There's no question. I mean, you know, wastewater facilities can and often are built by the government. The way they chose to proceed was to get people to engage with them by having the ownership of the facility. But they designed it. And my client didn't have any role whatsoever in the design of the facility. There's no dispute that there's no specific obligation for indemnification in what you're referring to as a contract. That's correct. And there never is as far as a Spirin claim goes. Well, in Spirin, the claim is directly, it's damages against the contractor because of his performance during performance of the contract. The specifications go awry. In Hercules, it's indemnification of a third party after performance of the contract. Hercules is a lot more like this claim than Spirin, right? No, I disagree with you, Your Honor. Well, tell me what I missed. It's an indemnification, as Judge Prost points out. Spirin says if you rely on government design specifications, and those turn out to be defective, the government warrants them, and you can get your damages. In this case, the court below held it. But that Spirin was in the context of the CDA, right? No. I mean, Spirin was in the context of a CDA claim. Well, that's so long ago. Frankly, Your Honor, I don't. Well, assume for the sake of argument, it is. I was looking for any guidance that you have. I know it's a design issue here. Is there any case that applies the Spirin doctrine to a non-CDA contract that you know of? The answer is, Your Honor, I don't know that standing here today. But I can tell you categorically that they have not cited to a single case applying the ADA to a valid Spirin-type warranty. And as this court said in Lopez, to do so would eviscerate the doctrine. Because there is never an appropriation made or a provision in a contract made that if our specifications are bad, we will indemnify you. Is there a distinction between design specifications and performance specifications? Yes. That's the key point in Hercules, as a matter of fact, that the Spirin warranty didn't apply because the Hercules case and the Agent Orange case involved performance specifications. But the design specifications in Hercules were design specifications. No, they weren't. It was for a product. And they just said, we need a product that does this. And they produced exactly what was called for, but it had unintended consequences. Those are performance specifications. We need a defoliant. We need something for insulation. Let me quote from Hercules. The formula and detailed specifications for manufacture of Agent Orange are specifications for directing how the contract is to be performed. That's what Hercules says. Right, performance specifications. I mean, I know they use the word design there. But the distinction is. They use the word perform. But really, they're talking about the compound. They're instructing on what it is that was to be manufactured. All they were saying, though, is that here's the chemical formula for Agent Orange or asbestos. They didn't invent it. The government didn't invent it. Here are the specifications for the. But it was designed by Mr. van der Stappen. He did, and he had no prior experience in doing this. And he made a mistake. In the Hercules case and the Agent Orange cases, all they were doing was taking the chemical formulas for asbestos and Agent Orange. This is what we mean by asbestos. They weren't creating the design. They were just reciting the design. And that's why all it was saying is, it's a performance specification. We want a product. And there was nothing defective about the product. It did exactly what it was supposed to do. It just had an unintended effect that no one could have anticipated. Here, everything flows. Could there be any doubt that if the government owned the facility itself and it was on Mr. Coutone's land and Mr. Coutone was held liable for it, that this would be a valid claim? Of course it would be a valid claim. They designed it pursuant to a contract. Was there any prior appropriation for indemnification? Not for indemnification. There was a prior appropriation. As I said, I took some issue in my brief to the process on the 12B motion where we provided sworn testimony from the trial and they provided self-serving affidavits. But the fact is, the record shows there was $500,000 to $700,000 per year allocated to the project. And there was no evidence whatsoever that it had been exhausted. I guess I still didn't hear the exact answer to my question, which was whether there was a prior appropriation for indemnification. There never would be for a Spear and Tite claim. That's what the court said in Lopez, that there would not be any appropriation made for an indemnification because it's never anticipated that the design specifications are going to be incorrect. It's an implied in fact warranty in all government contracts. And it's not limited to a Contract Disputes Act claim. If there is a contract, the government mandates the specifications, the specifications are defective, then there's a valid Spear and Claim. And under that, unless you're going to say it's not a contract, which the trauma services cases say is wrong, it is a contract, and the facts are as alleged, and this is a 12B motion, although there's a lot of evidentiary support on the record, is that they designed it and no deviations were permitted from the design. I mean, that was the testimony of Mr. Vanderstapp in a trial in the Eastern District. You want to save your rebuttal time? Yes, I do. Thank you very much. Thank you. Ms. Stenifer? May it please the court. Appellant's argument just now, citing all kinds of facts, testimony from another case, a trial in another court, underlines why he should have, he was required and should have, but failed to, exhaust his administrative remedies and provide this court with an administrative record to review. But let's stick with some of the questions that are raised by the questions to your opponent involving the Sparron Doctrine and the Anti-Deficiency Act. But the problem with trying to do that, Your Honor, is that he has made several mischaracterizations of fact, and there's no basis in this record. I mean, he cites to the district court. The district court found specifically, and I cited this in our brief, specifically found that the problem, that the harm to Rick's Mushroom's  from the government, but was, in fact, caused by Rick's Mushroom's services, failure to operate, failure to conduct the operation properly. I mean, and there were several 18 or 19 specific factual findings by the district court setting out all of the faulty, flawed practices of Rick's. And that's what caused the problem. And to say, for him just to come in and say, well, I want you to pay attention to some of what happened there. I like this testimony, but don't pay attention to the findings of fact the court actually made after hearing all that testimony, is it shouldn't be allowed. He shouldn't be allowed. But if the design, hypothetically, then, the design did cause the damage, does that change the result here in the government's view? Well, that's another problem, Your Honor. The contract does not, does not, the specifications here were developed, and there's several factual problems. Is there a clause that says no deviation from that? No, there's not, Your Honor. And the fact of the matter is that this was not a design of a building or of a facility. What the cost sharing agreement was intended to assist Rick's Mushroom Service, not in operating a wastewater treatment plant for the government that it gets to own. This is a commercial enterprise that's operated to rehabilitate spent mushroom substrate. And that's an environmentally sensitive undertaking. And so the NRCS offered its services. It will cooperate with you. But the specifications and conservation practices, that's primarily what the cost sharing agreement was about, was to implement conservation practices. And part of that was how many sprinklers you'd need, how big a storage facility, an impermeable underlying base. These were just advisory specifications? Well, it was not a building. It was not directions. Here's how you should run your business. Here's how you should operate it. And there were some drawings. There were, in other words, your base, your impermeable base should be made of this kind of material. And if you're going to have this much. When the government says that to someone, doesn't that become something close to mandatory? Well, except that they were all developed. Is there an implicit no deviations clause, even if there isn't a literal one? But the problem here, Your Honor, is that all of the operations, all of the direction, the specifications, if you will, were developed in cooperation with Rick's. Rick's had input into this. This was not dictated by the government. It was not, as Your Honor earlier pointed out, this was not, we want to buy. Well, I mean, I understand what you're saying. And part of the question I had here was the application of the Spearman Doctrine to a non-procurement contract. But my question is, the government didn't cite. And I just wondered if it was the government's position that the Spearman Doctrine doesn't apply outside the procurement contract. That's what we argued below, Your Honor. That was, yes, we think that it doesn't make any sense. Because, because, because. Even if it's a design issue, therefore, it would, the Spearman Doctrine would not apply. Yes, because there isn't, the other part of this is the government, in this situation, in this cooperative agreement, this was a voluntary undertaking by Rick's. Rick's sought out the assistance. Okay, well, on that point, do you have any cases that support your position? I mean, has that issue been resolved or ever decided to raise? No, I don't believe it has, Your Honor. And the Court of Claims judge did not buy that argument, correct? That's correct. And we believe that was an, that was incorrect. It was error on her part. And what about the other argument made about whether or not assuming the Spearman Doctrine applies, the clash between the Spearman Doctrine and the Anti-Deficiency Act? Well, in this case, in order to get to that question, you have to buy a lot of the appellant's argument that this is a contract that you're presupposing, by even getting to that question, you're presupposing that there's Charter Act jurisdiction to hear this in the first place, which we think that there is not. In other words, there's clearly no CDA jurisdiction. So the only other way to get into the claims court here is to call this a contract over which there's any claims court jurisdiction. And we think there's not here, I mean, because we think the exhaustion requirements apply, and therefore, all of this, any claim, any judicial review that Rich wants to seek over his complaint here lies only in district court. And we set that out at length in- For an implied in fact warranty, you've got to have bargain for consideration. It's gotta be just a complete contract, but it just wasn't written down. Is there consideration on the part of the government in receiving the guarantee that this will be done according to its specifications? And was that bargain for, does that become a contract that just wasn't written down? No, Your Honor, the- Where does it fall apart? Well, because all the government was bargaining to do was to assist an existing business. The government didn't ask Ricks to start this business or to use these practices. This is an ongoing business that Ricks is gonna operate anyway. And it's bound by environmental laws and standards. And so the government offers help because you're gonna do this anyway. We would prefer that you do it in a way that doesn't cause an environmental problem. So we'll help you. And if you want our help, we'll develop practices, we'll tell you, we'll give you technical advice. Well, you're kind of suggesting there's no government consideration that you didn't acquire any value in exchange for your dictation of the specifications and your extension of a warranty, but didn't you? I mean, can't we see your achieving your mission of protecting the environment as the consideration that you received in exchange for the warranty? Except that the kind of the authorization for the government to enter into the cost-sharing agreement limits the purpose, limits the- Government authority, the authorization of the officer, contracting officer then. Correct. And there's no indication in any of the regulations or the statutes that apply here. How did that issue play out in Spirin and Hercules? Was that a precluding feature in the Spirin case? I'm sorry, Aaron, could you? Well, you could argue that there would, since it's an implied warranty, there was no government officer who could authorize that warranty in the Spirin case either, and yet the Supreme Court told us that an implied warranty exists. Except that here, I mean, once again, in Spirin, the government was contracting to purchase something, and there were, in this case, the government was not purchasing anything, and it lacked the control and the intent. But did the government get something anyway? It got compliance with its environmental policy. Well, or not. Does that support the warranty? Provide consideration for the warranty, implied as it may be. I think that the terms of this agreement do not support general contract remedies. That's what I'm trying to get at. This is a limited kind of agreement to assist individuals or commercial enterprises with meeting their preexisting obligation. So we're back to the point that it's not a procurement contract, and you don't have a Spirin-type warranty outside of the procurement context, which the district judge disagreed with you on. Yes, she did, and we think she was wrong in disagreeing with us there. In a sense, though, the government didn't procure a facility, and they procured a facility, the specifications of which were set forth in the agreement. Well, they didn't procure anything in the sense that the government obtained title to anything here. They didn't buy anything. Not obtain title, certainly. And the fact that- But they achieved the objective that Judge Rader was referring to by assuring that this facility would be built according to these specifications. Why did the government insist on adherence to the specifications as opposed to simply saying, we're happy to assist you under this program, and here's a set of suggested drawings? Because the idea, the other part of, we'll provide you this advice and this technical support, and if you follow it, we'll share the cost. We'll pay for some of, we'll pay some of the cost of you constructing it. The government didn't build this. The government didn't tell him who to get to build it, and it didn't construct anything. And I think, I mean, admittedly, I have not seen the facility, but my understanding is it's not a building. It's an open field with some spray sprinklers, what have you, and supposedly, or what was supposed to have been done is have an impermeable base on which to store the material while it's awaiting being spread out on the field so it didn't leach into the ground where it was. But the government did obligate them to follow the design. I mean, by reaching the contract and the understanding, they were obligated to follow those particular designs, right? They were supposed, yes, they were supposed to, they were supposed to abide by the practices, and if they didn't, the government could either not share in the cost or ask for the money back. And if, hypothetically, the following, the fact that they followed the designs, if we could establish, or if it had been established that clearly caused the third-party liability damages here, why not? Then why shouldn't the government be liable for indemnification? Well, in part here because the specifications, the direction, the practices, what have you, were developed, they were not handed down to Ricks. They were developed in cooperation with him. Well, let's assume, hypothetically, the government insisted in a cost-share agreement that the other party follow this in order to get the funding, and they followed it, and by following the design that clearly is established as the cause of the liability to third parties. Would the result be different then? I still think, I still think in that situation, I still think you cannot have an implied, in fact, contract here for indemnification. I think the Anti-Deficiency Act precludes that, which. Because? Because there's no specific appropriation for the indemnification.  And the limited amount of appropriations here, which is a further indication that the government did not, a firmer indication of the limitations of this kind of agreement, 67 U.S.C. 6962A, which is the authorization for cooperative, for this type of cooperative agreement, limits the amount of money to a specific, not to a dollar amount, it refers to some budgetary level. And apparently in the years at issue here that Ricks is complaining about, that was $100,000, that worked out to $100,000 per entity, which Ricks had exhausted. And that, but that's the only appropriations that there were here. That appropriation wasn't explicitly for indemnification. That was the overall. That was to conduct the program, to fund the cost-sharing aspect of the program. Can I address the exhaustion requirement? You have a few minutes, a minute, a little less. One second, I believe. Well, once again, as I started saying, had the administrative exhaustion, had Ricks pursued his administrative remedies here, as we believe he should have, there would be a factual record. And we wouldn't have to, there wouldn't be any need to struggle with the plaintiff's mischaracterizations of the facts here. And we believe that, that the kind of technical determinations that Ricks is complaining about are clearly governed by the applicable regulations in 614.3 and 614.200 of the CFR. And that they clearly fall within, the trial court was incorrect in saying that this was a different kind of complaint. This was a breach of contract, which is somehow different from complaining about an adverse technical determination. They're exactly the same thing. Thank you, Ms. Stetford. Bart, you have a little over a minute and a half remaining. Okay, thank you, Your Honor. Your Honors, to the extent that counsel is arguing factual issues, this is from a 12B motion. The allegations of the complaint must be accepted as true. I don't think that if this case were tried- Did the contract actually contain a no deviations clause? Yes, it did, Your Honor. I refer you to R18, in terms of conditions, the participant agrees to carry out the practices in accordance with the specifications and other special program criteria obtained from the local field office of the Natural Resources Conservation Service. Give me the page again. R18, it's the actual contract itself. Says it in the terms, under terms and conditions. That's the appendix page? Yeah, R18. I believe, Your Honor, it's 836. It's 36. I apologize, Your Honor. I guess my copy- Where is it again? It's in part two, terms and conditions, and I just read it. And there's no dispute, though, that it was designed by Mr. Van der Stappen. And as far as the contention that there's no appropriation for it, that's what Lopez held. Remember the quote that I have in my brief. There is a standing appropriation- You agree to carry these things out, but there's not a no-deviation clause. Well, that's correct. It doesn't specifically say no deviation, but it says you agree to carry it out in accordance with the specifications. And he provided the- Did you have input into those specifications? Not whatsoever. Mr. Coutone is not an engineer. All it was was Mr. Van der Stappen designed it and said here- And by the way, I mean, again, we're getting into facts, but counsel stated that we chose the contractor. That's false. The contractor was selected by the government. They're saying, here, use this contractor. Now, if we had argued, would we have been able to convince them to use somebody else? Maybe. But that's not the facts of the case. And there's no record as to that anyway, which is before this panel. By the way, clause three here permits modifications upon agreement of parties. That's correct. So that's hardly no deviations. If you'd seen some problem, you could have brought it to the attention of everyone as well. Well, it's a standard professional negligence claim. We're relying on the expertise of a government engineer. How would we have known that if there was anything that's defective about it? Negligence is a tort, tort, does not lie under the Tucker Act. That's correct, but- Slip of the tongue. Well, there is a pendant claim. If you hold that the Spearing claim is valid, there is a pendant professional negligence claim, which the court would have jurisdiction to hear. But yes, I mean, you can interpret that as meaning there's no no deviation clause. I think if you read Spearing for what it is, which is if the government provides the specifications and it's built according to the government's specifications and those specifications are defective, the government is liable for the damages because those specifications are warranted. The absence- Comments, Mr. Bart? I thank you for listening to me, Your Honor. Okay, thank you, Mr. Bart, very much.